# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOSEPH MICHAEL ARPAIO,

     Plaintiff,

v.                                                  Case No: 8:24-cv-2647-CEH-NHA

JOSEPH ROBINETTE BIDEN, JR.
HARRIS FOR PRESIDENT, and
UNITED STATES OF AMERICA,

     Defendants.

_____/

## <u>O R D E R</u>

    This matter comes before the Court on the Motions to Dismiss filed by Defendants former President Joseph Biden, Jr. and the Harris for President Campaign f/k/a Biden for President, Inc. (collectively "Campaign Defendants") (Doc. 6) and the Defendant United States of America (Doc. 38). In the motion filed by the Campaign Defendants, they seek dismissal of the Amended Complaint for lack of personal jurisdiction and for failure to state a claim. The United States seeks dismissal of the Amended Complaint for lack of subject matter jurisdiction. Plaintiff Joseph Michael Arpaio ("Arpaio" or "Plaintiff") filed responses in opposition. Docs. 18, 40. The Campaign Defendants replied (Doc. 24). Upon careful consideration of the Defendants' motions and being fully advised in the premises, the Court will grant the motions to dismiss and dismiss Plaintiff's claims against the Campaign Defendants for

lack of personal jurisdiction and dismiss the claims against the United States for lack of subject matter jurisdiction.

## I.     BACKGROUND[1]

Plaintiff Arpaio is a citizen and resident of Arizona. Doc. 1-1 ¶ 3. At the time of filing the Amended Complaint, Defendant Joseph Robinette Biden, Jr. ("Mr. Biden") was the President of the United States and Kamala Harris ("Ms. Harris") was the Vice President. *Id.* ¶¶ 4, 5. Mr. Biden was previously running for re-election in the 2024 Presidential election but withdrew from the race on or about July 21, 2024, and Ms. Harris became the Democratic candidate for President. *Id.* ¶¶ 4, 5. Biden for President, Inc. ("the Campaign") was incorporated in Delaware and was Mr. Biden's campaign. *Id.* ¶ 6. The Campaign was renamed "Harris for President" once Ms. Harris became the Democratic candidate. *Id.* The Campaign has physical offices in Hillsborough County, Florida. *Id.*

Arpaio alleges he was directly affected and victimized by Defendants' defamatory statements that were "widely published" and "accessed by numerous third-party individuals in Florida." *Id.* ¶ 7. Arpaio, who was honorably discharged from the army in 1953, is a long-time and distinguished member of law enforcement, having served communities in Washington, D.C. and Las Vegas, Nevada. *Id.* ¶ 8. In November of 1957, Arpaio was appointed as a special agent with the Federal Bureau

---

[1] The following statement of facts is derived from the Amended Complaint (Doc. 1-1), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

of Narcotics, which later became part of the U.S. Drug Enforcement Administration ("DEA"), headquartered in Washington, D.C. *Id.* ¶ 9. Arpaio lived in Mexico and served 34 years as a law enforcement official there and the U.S.-Mexico border area. *Id.* ¶¶ 10, 11. In 1989, then-senator Mr. Biden praised Arpaio for his achievements fighting the drug trafficking in foreign countries, including Mexico. *Id.* ¶ 13. In 1993, Arpaio was elected Sheriff of Maricopa County, Arizona where he held that position for nearly twenty-five years. *Id.* ¶ 14. At the time of filing his Amended Complaint, Arpaio was running for mayor of Fountain Hills, Arizona. *Id.* ¶ 15.

On June 6, 2024, the Campaign's Twitter account @BidenHQ posted a video with a caption in Spanish. *Id.* ¶ 16. According to Arpaio, Google Translate translates the caption as follows: "Trump brings to the stage Joe Arpaio, a convicted felon, who was pardoned by Trump after he racially profiled and abused immigrants." *Id.* The caption was accompanied by a video of Trump introducing Arpaio to a crowd. *Id.* ¶ 17. Arpaio alleges that English-speaking viewers would understand this video to be calling Arpaio a "convicted felon." *Id.* ¶ 18. He alleges the post was viewed 26,000 times, including by individuals in Hillsborough County, Florida. *Id.* ¶ 20. He further alleges that the intent behind the post was to affect the 2024 Presidential election, and specifically to try to win Florida, by falsely associating Trump with a "convicted felon" and to harm Plaintiff Arpaio's reputation. *Id.* ¶ 21. The post was directed at Florida voters, and particularly those in Hillsborough County, as a form of election interference because, he asserts, Hillsborough County is important in deciding who

3

will get Florida's electoral votes. *Id.* ¶ 22. He alleges that this is why the Democratic party chose Hillsborough County for their campaign office. *Id.*

Arpaio further alleges the post on Twitter is false, malicious, and defamatory because he has never been convicted of a felony and he has never been found to have "abused immigrants." *Id.* ¶ 23. Arpaio explains that in 2017 he was convicted of contempt of court, which is only a misdemeanor, and that later Trump pardoned him. *Id.* ¶ 24. Arpaio alleges that falsely labeling someone as a "convicted felon," when they had only been found liable for misdemeanor contempt of court, is harmful to a person's reputation. *Id.* ¶ 25. He alleges the false statement harmed his chance at being elected mayor. *Id.* Arpaio alleges that Defendants acted with malice, or at a minimum reckless disregard, in making the false statement that Arpaio was a convicted felon. *Id.* ¶ 26.

Arpaio also alleges that there is no absolute immunity for unofficial acts, such as defamation. *Id.* ¶ 27. Arpaio asserts that the harm caused by the statement was exasperated by Ms. Harris' statement made at the UnidosUS annual conference in August 2023: "[a]cross our nation, extremist so-called leaders demonize, target, and attack immigrants." *Id.* ¶ 28. He alleges this "false, malicious, and defamatory statement" was understood to refer to Arpaio and was broadcast into this judicial circuit and viewed by persons residing here. *Id.* ¶¶ 29, 30. These false statements have harmed Arpaio financially and they have harmed his reputation. *Id.* ¶ 30.

In a three-count Amended Complaint, Arpaio sues Defendants for defamation, defamation per se, and defamation by implication. *Id.* ¶¶ 31–54. After removing the

action to federal court, the Government moved to substitute the United States of America in place of Vice President Harris pursuant to a Westfall Act Certification, certifying that based on the allegations in the amended complaint against Ms. Harris, she was within the scope of her federal office or employment as the Vice President of the United States at the time of the incidents out of which Plaintiff's claims arose. *See* Docs. 2, 2-1. On April 22, 2025, the Court granted the Government's motion and substituted the United States of America for Vice President Harris.[2] Doc. 33. Pending before the Court are Defendants' motions to dismiss Plaintiff's Amended Complaint. Docs. 6, 38.

## II.    LEGAL STANDARD

### A.    Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction; Rule 12(b)(1) permits a facial or factual attack. *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). In contrast, a Rule 12(b)(1) factual attack "challenge[s] the existence of subject matter jurisdiction in fact,

---

[2] Since the government was substituted as Defendant, Arpaio has not filed a motion challenging this designation, nor does his response identify any additional facts to indicate the substitution was improper.

irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Here, the United States asserts a facial challenge.

### B.    Personal Jurisdiction

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans–Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over the nonresident defendant. *See id.* at 1313; *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant can refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional

allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The district court must construe all reasonable inferences in the light most favorable to the plaintiff when confronted with conflicting evidence. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); *Consol. Dev. Corp.*, 216 F.3d at 1291.

To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See Future Tech. Today*, 218 F.3d at 1249. Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* In determining whether jurisdiction comports with the Due Process Clause, the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Int'l Shoe*, 326 U.S. at 316).

### C.    Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

## III.    DISCUSSION

In his Amended Complaint, Arpaio alleges claims for defamation generally, defamation by implication, and defamation per se. Campaign Defendants contend that they are not subject to the jurisdiction of Florida courts. They also assert various grounds on which the Amended Complaint should be dismissed for failing to state a claim on which relief can be granted. "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir.

1997); *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir. 1983) ("Since the district court was without in personam jurisdiction, we do not reach the merits of the negligence issue or the cross-appeal."). The United States argues the Court is without subject matter jurisdiction to consider this suit because the government has not waived sovereign immunity as to Plaintiff's defamation claims.

   A.    <u>Subject-Matter Jurisdiction</u>

   It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011) (citing *United States v. Dalm*, 494 U.S. 596, 608 (1990)). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." *Zelaya*, 781 F.3d at 1322 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475–76 (1994)). The Federal Tort Claims Act ("FTCA") provides for a specific waiver of sovereign immunity for tort claims against the United States. *See* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]"). The waiver, however, is qualified by § 2680, which identifies certain exceptions. In relevant part, § 2680 exempts from the waiver of immunity for any claim arising out of "libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). Thus, the FTCA specifically excludes from its waiver of sovereign immunity any claim for defamation. *See O'Ferrell v. United States*, 253 F.3d 1257, 1263 n.4 (11th Cir. 2001).

Because Plaintiff is suing the United States, he bears the burden to establish that the federal government has waived its sovereign immunity with respect to his claims. *See Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010). He has failed to do so. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475. "Sovereign immunity is jurisdictional," and without a waiver of that immunity, the court lacks "jurisdiction to entertain the suit." *Id.* A waiver of sovereign immunity must be "unequivocally expressed," and an expressed waiver will be strictly construed. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992) (citations omitted).

Arpaio provides no facts or legal basis to demonstrate there has been a specific waiver of sovereign immunity. Instead, he summarily contends Ms. Harris was acting solely as an "office seeker" when she defamed Arpaio and that she is therefore not entitled to sovereign immunity.  By his own allegations, however, Ms. Harris was using her platform as Vice President to make the alleged defamatory statements.

The United States argues that Plaintiff fails to plead an applicable waiver of sovereign immunity in his Amended Complaint, and that, regardless, there is no viable waiver in this case. The Court agrees and will dismiss the claims against the United States for lack of subject-matter jurisdiction.

The United States also raises as a basis for dismissal Plaintiff's failure to exhaust administrative remedies which is necessary before pursuing a claim under the FTCA. Doc. 38 at 2 n.1. Section 2675(a) provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or

personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Because it is a jurisdictional prerequisite, the filing of a claim under the FTCA cannot be waived. *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981).[3] As there is no allegation in the Amended Complaint that the administrative exhaustion requirement has been satisfied or any indication Plaintiff filed an administrative tort claim or received a final agency decision, the Court finds this provides an additional ground for dismissal for lack of jurisdiction. *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) ("A federal court does not have jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency."). The government seeks dismissal with prejudice. The Court declines and will dismiss the action without prejudice. *See* 28 U.S.C. § 2679(d)(5).

B.    Personal Jurisdiction and Florida's Long-arm Statute

The Campaign Defendants move to dismiss for lack of personal jurisdiction. They argue that exercising personal jurisdiction here would violate Florida's long-arm statute and constitutional due process because Plaintiff filed this case in Florida, a

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

forum which is entirely disconnected from the tortious conduct alleged. Personal jurisdiction "concern[s] the extent of a court's power over the parties and the fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). It "represents a restriction on judicial power . . . as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)). Thus, the court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Trans–Siberian Orchestra*, 689 F. Supp. 2d at 1312 (citing *Posner*, 178 F.3d at 1214 n.6).

The Court begins by analyzing whether Florida's long-arm statute has been satisfied. A defendant may be subject to personal jurisdiction under Florida's long-arm statute by either: (1) engaging in one of the enumerated acts listed under Florida Statute section 48.193(1)(a), thereby subjecting itself to *specific* personal jurisdiction; or (2) engaging in substantial and not isolated activity within Florida, as required for *general* personal jurisdiction under section 48.193(2). *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). Plaintiff's Amended Complaint does not cite to Florida's long-arm statute, nor does it identify which provision of section 48.193 confers jurisdiction over the Campaign Defendants. The allegations of the Amended Complaint sound in specific jurisdiction. In his response to the motion to dismiss, however, Plaintiff argues that both general and specific jurisdiction exist. Upon consideration, the Court finds that Plaintiff has not established that the Court has either specific or general jurisdiction over the Campaign Defendants.

12

i.  *General Jurisdiction*

General jurisdiction under the Florida long-arm statute exists when "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Plaintiff relies on *Glovegold Shipping, Limited v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 11 (Fla. 1st DCA 2000), and argues Defendants' contacts with Florida represent "continuous and systematic general business contacts" to support general jurisdiction.

The Supreme Court clarified the standard for general jurisdiction, however, when it revisited the meaning of "continuous and systematic contact" in *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014). It reiterated that the quintessential contact that renders a defendant "at home" in the forum are formal incorporation in that state and locating its principal place of business there. *Id.* at 139. It is the "exceptional case" for a corporation to be "essentially at home" in a place other than its domicile. *Id.* at 139, n.19. Therefore, contrary to Plaintiff's argument, a corporation is not subject to general jurisdiction in every state where it engages in "substantial, continuous, and systematic course of business." *Id.* at 137–38. The Eleventh Circuit echoed this sentiment in *Carmouche v. Tamborlee Management, Inc.*, stating that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 789 F.3d at 1204 (quoting *Daimler*, 134 S.Ct. at 760). Typically, "an individual is subject to general jurisdiction in [his] place of domicile," and a corporation in "its

place[s] of incorporation and principal place of business." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). The Campaign is incorporated in the state of Delaware (Doc. 1-1 ¶ 6), and there is no allegation that its principal place of business is in Florida, nor is Defendant Biden alleged to be a Florida citizen.

Plaintiff contends that general long-arm jurisdiction in Florida nevertheless exists over these Defendants based on his allegations that Defendants had a physical campaign office in Hillsborough County and the county is projected to be "one of the most important counties in deciding whether Florida's electoral votes will go to Biden or Trump in the 2024 Presidential election." The Court disagrees. Alleging the existence of a campaign office in the county is not the type of "affiliations with the State [that] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *See Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  General jurisdiction is lacking.

ii.    *Specific Jurisdiction*

Plaintiff alternatively argues that specific personal jurisdiction exists under Fla. Stat. §§ 48.193(1)(a)(1) and (2) because Defendants are "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" or are "[c]omitting a tortious act within this state." First, Plaintiff contends that the Campaign Defendants operated a business in Florida and had campaign offices in Hillsborough County. Second, Plaintiff submits that Campaign Defendants committed a tortious act within the state because the defamatory statements at issue were widely published and accessed by numerous third-

14

party individuals in Florida. On the first issue, the Campaign Defendants argue that paragraph (1)(a) requires more than having a Florida office to confer personal jurisdiction. Rather, it requires the cause of action to arise from Defendants' business activities in Florida, which Defendants urge is not the case where the alleged cause of injury does not arise out of the Defendants' contacts with Florida. On the second issue, Defendants argue that posting defamatory material on a website alone does not constitute the commission of a tortious act within Florida for purposes of its long-arm statute. Doc. 6 (citing *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010)).

In analyzing the issue of specific jurisdiction, a court must first determine whether one of the acts set out in section 48.193(1) of the Florida long-arm statute is applicable to the case at hand. In the event that this first prong of specific jurisdiction is met, a court must then address the due process prong. The Eleventh Circuit has comprehensively discussed this standard. And the United States Supreme Court, in a handful of leading cases, laid out the proper due process standard for cases involving specific jurisdiction. In the interest of preserving "traditional notions of fair play and substantial justice" a state may exercise specific jurisdiction only over a defendant who has certain "minimum contacts" with the state. *Int'l Shoe Co.*, 326 U.S. at 316. This so-called "minimum contacts" rule is the "constitutional touchstone" for such jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

In a more recent case, the Supreme Court reiterated the importance of the "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" in the context of specific

15

jurisdiction. *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires*, 564 U.S. at 919). Here, Plaintiff claims that Defendants committed tortious acts in this State, but as discussed in more detail below, the alleged connections between the Defendants' alleged defamatory conduct and the State of Florida are lacking. Establishing one of the Florida long-arm statute's enumerated acts alone, however, is not enough to satisfy the Florida statute. "Specific jurisdiction requires a connection or 'connexity' between the enumerated activity in Florida and the cause of action." *Aegis Def. Servs., LLC v. Gilbert*, 222 So. 3d 656, 661 (Fla. 5th DCA 2017) (citation omitted).

To satisfy Florida's long-arm statute for specific jurisdiction, a plaintiff must allege that the "cause of action 'aris[es] from'" the defendant's relevant act "in Florida." *Samsung SDI Co. v. Fields*, 346 So. 3d 102, 106 (Fla. 1st DCA 2022) (quoting *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002); *see also* § 48.193(1)(a), Fla. Stat. (authorizing specific jurisdiction "for any cause of action *arising from*" certain enumerated acts "within this state" (emphasis added)). Florida courts have explained that the "'arising from' prong is [] known as the 'connexity' requirement," and "[i]t requires that there be a 'nexus' or 'substantial connection' between the cause of action and the defendant's activities within the state." *Samsung*, 346 So. 3d at 106 (reversing trial court's failure to dismiss for lack of personal jurisdiction where there was no "nexus" or "substantial connection" between the cause of action and the defendant's activities within the state); *see also Fincantieri-Cantieri Navali Italiani, S.p.A. v. Yuzwa*, 241 So. 3d 938, 946–47 (Fla. 3d DCA 2018) (holding that trial court lacked specific

personal jurisdiction where non-resident defendant did business in Florida but there was an inadequate connection between Florida and defendant's alleged acts); *Camp Illahee Inves., Inc. v. Blackman*, 870 So. 2d 80, 85 (Fla. 2d DCA 2003) (section 48.193(1)(a)(1)'s conferral of jurisdiction for operating or engaging in business in Florida still requires "connexity between the defendant's activities and the cause of action").

The connexity to Florida is lacking here. Plaintiff, an Arizona citizen and resident who at the time of his Amended Complaint was running for mayor of Fountain Hills, Arizona and who has served as a member of the law enforcement community in Washington D.C., and Las Vegas, Nevada; served as top law enforcement official in Mexico for 34 years; and served as the Sheriff of Maricopa County, Arizona, for 25 years (Doc. 1-1 at ¶¶ 3, 8, 10, 11, 14, 15), sues for defamation claiming injury to his reputation based on two statements—one comment posted on @BidenHQ Twitter page in June 2024 and one statement made in a speech by Vice President Harris in Chicago in August 2023.

*The Twitter Post*

Plaintiff was a citizen of Arizona at the time of the Twitter post. Plaintiff alleges that a video of Donald Trump and Joe Arpaio was posted to the Campaign's "Official Rapid Response Page" with a caption in Spanish. The caption purportedly Google translates to: "Trump brings to the stage Joe Arpaio, a convicted felon who was pardoned by Trump after he racially profiled and abused immigrants." Doc. 1-1 at 13. The screenshot of the video shows Donald Trump on a stage in Phoenix Arizona. *See*

17

*id.* He alleges that the false post harmed his chance at being elected mayor in Arizona. Defendants respond that the Spanish phrase "criminal convicto" translates to "criminal convict," not felon, and the fact that Arpaio has a criminal conviction is true. Even accepting Plaintiff's allegations that the tweet translates to "convicted felon," there is still nothing about the Defendants' conduct—the alleged defamatory Twitter comment—that relates to or is connected in any way to Campaign Defendants' having an office or operating in Florida.[4] And Plaintiff's allegations that the statements were intended to "try to affect the 2024 Presidential election, and specifically try to win Florida, by falsely associating Trump with a 'convicted felon'" (Doc. 1-1 ¶ 21) have no relevance or import to *Plaintiff's* claim that he has been defamed and suffered harm including "subject[ing] him to hatred, distrust, ridicule, contempt and disgrace" … as well as "damag[ing] him personally, financially, and politically, since he may run for Fountain Hills Arizona Mayor in 2024." *Id.* ¶¶ 36, 37. The video was taken from a speech in Arizona and all his alleged injuries were incurred in Arizona where he resides. Thus, there is no connection between Defendants' alleged defamatory Twitter post and Defendants' activities in Florida, i.e., having a campaign office in Hillsborough County, to subject the Campaign Defendants to personal jurisdiction in Florida under § 48.193(1)(a)(1).

Similarly, § 48.193(1)(a)(2) does not provide a basis for personal jurisdiction on the facts alleged here. To support a finding of specific personal jurisdiction under

---

[4] Moreover, there is no allegation that Defendant Biden made a statement at all.

section 48.193(1)(a)(2), "[t]he statute expressly requires that the tort be committed in Florida." *Robinson Helicopter Co., Inc. v. Gangapersaud*, 346 So. 3d 134, 139 (Fla. 2d DCA 2022) (quoting *Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So. 2d 854, 857 (Fla. 3rd DCA 2007)). The Florida Supreme Court has made clear that "posting defamatory material on a website alone does not constitute the commission of a tortious act within Florida for purposes of section 48.193(1)[(a)(2)], Florida Statutes." *Internet Sols.*, 39 So. 3d at 1203.[5] "A party asserting jurisdiction in Florida over a nonresident defendant for a defamation claim must make a prima facie showing that the purported defamatory statements were not merely accessible to, but also 'accessed by a third party in Florida.'" *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (citing *Internet Sols.*, 39 So. 3d at 1215).

Plaintiff alleges that the post was viewed 26,000 times, including by individuals in Hillsborough County. Doc. 1-1 ¶ 20. According to Plaintiff, the statement regarding him was published "in this judicial circuit, nationwide, and worldwide." Doc. 1-1 ¶ 32. Although Plaintiff alleges that the statements were "published, opened, read and viewed by third parties in this judicial circuit," such vague and conclusory references to unidentified third parties are insufficient to support a finding of personal jurisdiction

---

[5] In *Internet Solutions*, the Florida Supreme Court found personal jurisdiction existed in that case where a nonresident defendant committed the tortious act of defamation in Florida for purposes of Florida's long-arm jurisdiction where the allegedly defamatory material about a Florida resident was placed on the Web and the material was accessed (or "published") in Florida. 39 So. 3d at 1206. Factually relevant to the holding in that case, and distinguished from the instant case, are the facts that the allegedly defamed plaintiff Internet Solutions was a Florida resident and that third parties who commented about the post were from Florida, supporting the complaint's allegation that the post was accessed in Florida.

in Florida. While Plaintiff makes conclusory allegations about the statements being accessed in Florida by unidentified persons, Plaintiff fails to plead facts to establish the statements were published in Florida to give rise to specific jurisdiction.

In *Catalyst*, plaintiff alleged that defendant "published . . . defamatory [s]tatements in Florida to Catalyst and third parties in Florida via [the Message Board] dedicated to discussions regarding Catalyst" . . . and that these "[s]tatements were accessed by Catalyst and others in Florida." *Catalyst Pharms.*, 748 F. App'x at 947. The court held that while the allegations established the statements were accessible in Florida, it did not point to specific facts showing that the statements were actually accessed in Florida. By way of contrast, the *Catalyst* court noted the Florida Supreme Court found that the statements in *Internet Solutions* had been accessed in Florida where exhibits to the complaint showed that online comments were made by individuals in Florida. *Id.* (citing *Internet Sols.*, 39 So. 3d at 1203–04, 1215).

Although Plaintiff here alleges that anti-Trump Twitter accounts republished and commented on the Twitter post, there is no indication or allegation that any of those comments were made by Florida citizens. In an apparent effort to cure his deficient jurisdictional allegations, Plaintiff filed an affidavit (Doc. 18 at 21–24) with his response to the motion to dismiss. The affidavit essentially repeats the allegations of the Amended Complaint, except he adds the statement that the "false, malicious and defamatory statements were accessed by individuals known to me who are residents of the state of Florida." *Id.* ¶ 15. This vague allegation is still insufficient to establish the existence of personal jurisdiction. *See Catalyst Pharms.*, 748 F. App'x at

946 (upholding dismissal for lack of personal jurisdiction where plaintiff alleged that defamatory statements were accessed by plaintiff and others in Florida and provided a declaration stating unnamed others of which plaintiff was aware had accessed the post in Florida). Like the *Catalyst* plaintiff, Arpaio does not identify who the unidentified others are or when they accessed the post.

Thus, Plaintiff fails to show the alleged defamatory Twitter post was directed at or in any way connected to Florida. The post was made by a non-resident Defendant about a non-resident Plaintiff and was published "in this judicial circuit, nationwide and worldwide" on Twitter in which it referenced a speech presented in Phoenix, Arizona and the purported damage from the alleged defamatory statement was to harm Plaintiff's chance of success in an Arizona mayoral election and/or to injure the reputation of Plaintiff, an Arizona citizen and resident. Relevant connexity to Florida is wholly absent, and specific jurisdiction under § 48.193(1)(a)(2) arising out of the Twitter post is lacking.

*The UnidosUS Annual Conference Speech*

Plaintiff alleges in his Amended Complaint that Vice President Harris made the following statement at the UnidosUS Annual Conference in August 2023 that amplified the defamatory Twitter post: "[a]cross our nation, extremist so-called leaders demonize, target, and attack immigrants." Doc. 1-1 ¶ 28. The Amended Complaint alleges that the defamatory statement was understood to be concerning Plaintiff who in the past was falsely accused of targeting immigrants while serving as the Sheriff of Maricopa County and that the statement harmed his reputation as well as harming

him financially. *Id.* ¶ 30. Defendants' motion identifies that the remarks were made at a conference in Chicago, Illinois, in July 2024. Doc. 6 at 4 n.2. As evidenced by the quoted statement, Ms. Harris did not reference Joe Arpaio in her statement. But even accepting Plaintiff's allegations as true that the statement was intended to refer to Plaintiff, there is no connexity to Florida. While Plaintiff again vaguely alleges that the statement was viewed by persons residing in this judicial circuit, he fails to allege specific facts, as opposed to conclusory allegations. In a light favorable to the Plaintiff, the statement was made by a non-Florida resident at a conference in Chicago about an Arizona citizen concerning his activities in Arizona and as a result of which this Arizona citizen's reputation was damaged and he suffered financially. Plaintiff's Amended Complaint fails to allege facts to subject Defendants to specific jurisdiction in Florida under § 48.193(1)(a)(1) or (2).

   *iii. Due Process*

   Because the Court concludes that Plaintiff has not established through his allegations or competent evidence that former President Biden and the Harris for President Campaign are subject to personal jurisdiction under Florida's long-arm statute, the Court need not reach the due process inquiry. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1275 n.15 (11th Cir. 2009). Accordingly, it is

   **ORDERED**:

   1.    Defendant President Biden and Harris for President's Motion to Dismiss (Doc. 6) is **GRANTED**. Plaintiff's action against former President Biden and the

Harris for President Campaign is dismissed without prejudice for lack of personal jurisdiction.

2.      The United States of America's Motion to Dismiss (Doc. 38) is **GRANTED**. Plaintiff's action against the United States is dismissed without prejudice for lack of subject matter jurisdiction.

3.      The Clerk is directed to terminate all pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on September 8, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any